## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Mark Galloway and Susan Galloway,** | **Case No. 1:19mc0101** |
| **Petitioners,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **United States Department of Transportation Office of Inspector General,** | **MEMORANDUM OPINION AND ORDER** |
| **Respondent** | |

Currently pending is Petitioners Mark and Susan Galloway's Motion to Quash Subpoenas issued by the Office of Inspector General on behalf of the Department of Transportation to Fifth Third Bank, Bank of America, N.A., JP Morgan Chase, N.A., and U.S. Bank, N.A. (Doc. No. 1.) Respondent Department of Transportation Office of Inspector General (hereinafter "DOT-OIG") filed a Brief in Opposition on August 9, 2019, to which Petitioners replied on August 14, 2019. (Doc. Nos. 5, 6.) For the following reasons, Petitioners' Motion is DENIED.

## I.    Facts and Procedural History

Petitioner Mark Galloway is a former Aviation Inspector for the Federal Aviation Administration ("FAA"). (Doc. No. 1 at p. 3.) He was assigned to the Los Angeles Flight Standards District Office in El Segundo, California. (*Id*.) Petitioner Susan Galloway is Mark Galloway's spouse. (Doc. No. 5-1 at ¶ 13.) According to Respondent, Mr. and Mrs. Galloway reside in both California and Ohio. (Doc. No. 5 at p. 2.)

On November 27, 2000, Mr. Galloway injured his back while at work. (Doc. No. 5-1 at ¶ 5.) He filed a claim with the Division of the Federal Employees' Compensation, which was accepted but

without compensation. (*Id*.) Years later, on September 11, 2007, Mr. Galloway again injured his back while at work. (Doc. No. 1 at p. 3.) He filed another claim with the Division of Federal Employees' Compensation, which was approved.[1] (*Id*.) Mr. Galloway states that he has remained off work since September 11, 2007. (*Id*.)

According to DOT-OIG Special Agent Anthony Q. Sartin,[2] Mr. Galloway began receiving workers' compensation benefits related to his FAA employment in October 2007. (Doc. No. 5-1 at ¶ 8.) Special Agent Sartin states that, based on 2017 calculations, Mr. Galloway received approximately $6,431.00 in compensation and $1,010.44 in agency costs for Health Benefits Insurance every four weeks. (*Id*.) In 2017, this totaled $96,738.72 annually in tax free income. (*Id*.) Special Agent Sartin states that, since October 2007, Mr. Galloway has received a total of over $900,000 in workers' compensation benefits. (*Id*.)

Special Agent Sartin further avers as follows:

9. As a result of receiving Workers' Compensation, Mr. Galloway is required to submit, on an annual basis, a Request for Information on Earnings, Form CA-1032. One criterion requires Mr. Galloway to disclose any and all money received from any business enterprise. Mr. Galloway certified every year that he did not have any other income or compensation derived from any business enterprises.

10. DOT-OIG has reason to believe that Mr. Galloway received compensation from sources other than his workers' compensation benefit but failed to report it on his Form CA- 1032.

---

[1] Mr. Galloway states that this claim was approved for the following injuries: sprain of the lumbosacral joint/ligament, thoracic or lumbosacral neuritis or radiculitis NOS, and displacement of the lumbar intervertebral disc without myelopathy. (Doc. No. 1 at p. 3.)

[2] Special Agent Sartin avers that he is "the lead agent in DOT-OIG's investigation of Plaintiff, Mark Galloway, in this case," and states that he is "investigating whether Mr. Galloway received income outside of workers' compensation benefits related to his employment with the Federal Aviation Administration." (Doc. No. 5-1 at ¶ 3.)

(*Id*. at ¶¶ 9, 10.)  Specifically, Agent Sartin states that Petitioners collectively own, or have owned, several rental properties, some of which were in Mr. Galloway's name and some of which were in Mrs. Galloway's name.  (*Id*. at ¶ 14.)  He further avers that he has "interviewed several tenants who lived at some of the properties who have made rent payments via check directly payable to either Mark Galloway or Susan Galloway." (*Id*.)

On May 8, 2019, Agent Sartin issued subpoenas seeking documents from Key Bank, Fifth Third Bank, JP Morgan Chase, Bank, N.A., Bank of America, N.A., and U.S. Bank, N.A.  (Doc. No. 1 at PageID# 11-22.)  These subpoenas sought the following documents:

> The subpoena demands the production of financial books and records related to Mark Galloway (SSN: ***) and Susan Galloway  (SSN: ***)  from September  1, 2007, to the present.  The records shall include, but are not limited to, those involving all open and/or closed checking, savings, trust agreements, custodial, and loan accounts.  The records shall include the following:
>
> 1.  Monthly bank statements, deposit tickets and details of deposits, withdrawals, debits, and checks written on the account(s).
>
> 2.  Loan applications, loan ledgers, loan correspondence, financial statements, tax returns, lease agreements, discounted notes, investment accounts, and contracts.
>
> 3.  All checks (bank, official, cashier, Treasurer, and traveler's) and money orders purchased.
>
> 4.  All incoming and outgoing wire transfers.
>
> Any other books and records relating to Mark & Susan Galloway.

(Doc. No. 1 at PageID# 13, 16, 19, 22.)[3]  The subpoenas commanded the banks to comply with the document requests by May 31, 2019.  (Doc. No. 1 at PageID# 11, 14, 17, 20.)

---

[3] The Court notes that the copies of the subpoenas filed by Petitioners in this action contained Mr. and Mrs. Galloway's full social security numbers, which were not redacted or partially redacted as required by Local Rule 8.1(a)(1).  The Court has restricted access to these documents to case participants only.  Counsel is reminded of their obligation to exercise care and diligence in protecting their clients' privacy in any future filings in this Court.

On June 26, 2019, Special Agent Sartin sent copies of the subpoenas and a Customer Notice to Petitioners via Fed Ex overnight delivery. (Doc. No. 5-1 at ¶ 16.) The Customer Notice notified Petitioners that "records or information concerning your transactions held by the financial institution named in the attached subpoena, summons, or formal written request are being sought by the U.S. Department of Transportation-Office of Inspector General in accordance with the Right to Financial Privacy Act of 1987, 12 U.S.C. § 3401-3422, for the following purpose(s): Alleged Workers' Compensation Fraud." (Doc. No. 1 at PageID# 23.) This Notice advised Petitioners of the procedure to follow in the event they "desire[d] that such records or information not be made available," including the filing of a motion in this Court. (*Id.*) The Notice instructed Petitioners that, in the event such a motion was filed, they were required to "serve the Government authority requesting the records by mailing (by registered or certified mail) or by delivering a copy of your motion and sworn statement to" Agent Sartin. (*Id.*) Finally, the Notice advised Petitioners that "if you do not follow the above procedures, upon the expiration of ten days from the date of service or fourteen days from the date of mailing of this notice, the records or information requested therein may be made available." (*Id.* at PageID# 24.)

On July 9, 2019, counsel for Petitioners contacted Special Agent Sartin and Senior OIG Counsel Seth Kaufman to discuss the "breadth, scope, and relevancy" of the subpoenas at issue. (Doc. No. 1 at PageID# 25.) During those discussions and in a subsequent email from Mr. Kaufman, the OIG "declined to reduce the breadth and scope of the Subpoenas in any way, which put the parties at an impasse and facilitated the need for filing a motion to quash." (*Id.*)

On that same date, Keely Warner, a legal assistant for Petitioners' counsel, contacted the Northern District of Ohio Clerk's Office to determine how to open a case in order to file a motion to

quash investigative subpoena.  (Doc. No. 6-1.)  Ms. Warner was "advised by the clerk that a miscellaneous case needed to be opened and that I could open up a new matter, and file the motion to quash electronically."  (*Id*.)  On July 10, 2019, Ms. Warner did as instructed and electronically filed a motion to quash on behalf of the Galloways along with the associated exhibits.  (*Id*.)  Ms. Warner states that "the filings and payment were accepted by the clerk and a case number was generated."  (*Id*.)  *See* Case No. 1:19cv1577 (N.D. Ohio).

The following day, however, Ms. Warner "was informed by an operation specialist for the Northern District of Ohio that miscellaneous cases cannot be opened electronically, and instead, they have to be filed manually by hand, in person, with original signatures on all documents."  (Doc. No. 6-1.)  According to Petitioners, the unidentified operation specialist requested that they file a second motion to quash.  (Doc. No. 6 at p. 3.)  On July 12, 2019, Petitioners re-filed the instant Motion to Quash, which was assigned a new case number.[4]

In support of their Motions, Petitioners submit Declarations, in which     Mark and Susan Galloway each aver that they are customers of the banks that were subpoenaed in this case.  (Doc. No. 1 at PageID# 9, 27.)  They also aver as follows:

> I do not believe that the records requested by the OIG's Subpoenas are relevant to the inquiry whether Mark Galloway is permanently disabled.

(*Id*.)

## II.    Legal Standard

The Right to Financial Privacy Act ("RFPA") "accords customers of banks and similar financial institutions certain rights to be notified of and to challenge in court administrative subpoenas

---

[4]  The previous case that was opened on July 11, 2019 was terminated as being "filed in error."

of financial records." *SEC v. Jerry T. O'Brien, Inc*., 467 U.S. 735, 745 (1984). *See also* 12 U.S.C. § 3410(a). The RFPA was enacted by Congress in response to the United States Supreme Court's decision in *United States v. Miller,* 425 U.S. 435 (1976), which held that bank customers had no Fourth Amendment right to privacy for financial information held by financial institutions. *See Sandsend Financial Conslutants, Ltd v. Federal Home Loan Bank Board,* 878 F.2d 875, 876 (5th Cir. 1989); *Gutierrez v. Soc. Sec. Admin. Office of Inspector General,* 2015 WL 5138105 at * 2 (E.D. Cal. Sept. 1, 2015). The "challenge procedures [set forth in the RFPA] constitute the sole judicial remedy available to a customer to oppose disclosure of financial records pursuant to" that statute. *See* 12 U.S.C. § 3410(e).

The RFPA permits the government access to "the financial records of a customer" of a financial institution pursuant to an administrative subpoena if (1) "there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry," and (2) a copy of the subpoena "has been served on the customer or mailed to [his or her] last known address on or before the date on which the subp[o]ena ... was served on the financial institution," accompanied by a notice informing the customer of his or her rights to challenge the subpoena. *See* 12 U.S.C. § 3405(1), (2). To quash an administrative subpoena, the customer must, "[w]ithin ten days of service or within fourteen days of mailing" of the subpoena, file a motion to quash in "the appropriate United States district court" that contains an affidavit or sworn statement:

> (1) stating that the applicant is a customer of the financial institution from which financial records pertaining to him have been sought; and

> (2) setting forth the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter.

12 U.S.C. § 3410(a). If no such motion is filed, "the records or information requested [in the subpoena] will be made available" after "the expiration of ten days from the date of service or fourteen days from the date of mailing" the required notice. 12 U.S.C. § 3405(2).

The Supreme Court has explained that "[a] [bank] customer's ability to challenge a subpoena is cabined by [these] strict procedural requirements." *Jerry T. O'Brien, Inc*., 467 U.S. at 745. Accordingly, federal courts have routinely held that failure to follow these procedures is sufficient reason to deny a motion to quash. *See, e.g., Hampton v. United States Securities & Exchange Commission,* 2018 WL 4853902 at * 3 (D.D.C. Oct. 5, 2018) (denying motion on untimeliness grounds); *Gutierrez*, 2015 WL 5138105, at *2–3 (same); *Swann v. Sec'y, U.S. Dep't of Hous. & Urban Dev*., 2006 WL 148738 at *1 (D.D.C. Jan.19, 2006) (same). *See also Thomas v. United States Department of Interior*, 2017 WL 3172407 at * 3 (M.D. Fla. July 24, 2017) (denying motion to quash on untimeliness grounds and noting that "[t]he procedural aspects of the RFPA appear to have been drafted in such a way as to minimize any delay in the agency's investigation").

"There are only three grounds on which a district court may quash a subpoena: '(1) the agency's inquiry is not a legitimate law enforcement inquiry; (2) the records requested are not relevant to the agency's inquiry; or (3) the agency has not substantially complied with RFPA.'" *Thomas v. U.S. Dep't of Homeland Sec*., 876 F. Supp. 2d 1, 6 (D.D.C. 2012) (quoting *Sandsend Fin. Consultants, Ltd*, 878 F.2d at 882); *see also, e.g., Rodriguez v. Soc. Sec. Admin*., 2014 WL 2960539 at *2 (E.D. Cal. June 30, 2014). "For purposes of an administrative subpoena, the notion of relevancy is a broad one." *Sandsend*, 878 F.2d at 882. "Bank records are relevant to a government investigation for purposes of RFPA if they 'touch on a matter under investigation[,]' even if they 'have only a loose connection' to the core of the inquiry." *Nicksolat v. U.S. Dep't of Transportation*, 277 F.Supp.3d 122,

128 (D.D.C. 2017) (alteration in original) (quoting *Sandsend*, 878 F.2d at 882). Thus, "while the government has to show something beyond mere curiosity in order to justify a subpoena, it does not have to show a lot." *Claxton v. Soc. Sec. Admin.*, 2008 WL 161594 at * 3 (S.D. Ohio Jan. 15, 2008).

In a challenge to an administrative subpoena issued under 12 U.S.C. § 3405, the movant has the initial burden of presenting a *prima facie* case showing that government access to his records would be improper. *See Claxton*, 2008 WL 161594 at *3; *Hancock v. Marshall,* 86 F.R.D. 209, 211 (D.D.C.1980). *See also Albrecht v. Soc. Sec. Admin.*, 2013 WL 4607395 at * 2 (E.D. Mich. Aug. 29, 2013) (noting that "'the initial burden of production is on the movant,' who must offer facts that show 'the documents requested have no connection with the subject matter of the investigation, he has not committed any offense related to the investigation, or he is the subject of harassment by the requests.'")(quoting *Breakey v. Inspector Gen. of U.S. Dept. of Agriculture*, 836 F.Supp. 422, 425 (E.D. Mich. 1993)). If the movant meets this burden through his or her sworn affidavit submitted under 12 U.S.C. § 3410(a), the government then has the burden of showing that the records sought are relevant to a legitimate law enforcement inquiry. *See Claxton*, 2008 WL 161594 at * 3.

## III.    Analysis

In their Motion, Petitioners argue the subpoenas at issue should be quashed because they are "not limited in scope and are irrelevant to the inquiry whether Mr. Galloway has allegedly violated the Federal Employees' Compensation Act by performing physical activities while on permanent disability." (Doc. No. 1 at p. 6.) Petitioners maintain that the financial records requested "will simply show how the Galloways have spent their money over the last twelve years" and suggests that the DOT-OIG should instead conduct witness interviews regarding whether Mr. Galloway is actively working and/or send him to an independent medical examination. (*Id.*) In addition, Petitioners

particularly object to Respondent's request to obtain Mrs. Galloway's financial records, arguing "nothing Susan Galloway did or did not do will demonstrate that Mr. Galloway allegedly violated the Federal Employees' Compensation Act by performing physical activities while on disability." (*Id.* at p. 7.) Petitioners assert that the subpoenas should be quashed or, in the alternative, limited in their scope to "documents that would . . . reflect[] monies coming into the Banks' various accounts, not how the money that is already in the accounts is being spent." (*Id.*)

Respondents raise several arguments in response. First, Respondents argue that Petitioners failed to properly serve their Motion on the United States because it was served only by email, which Respondents maintain is not permitted under § 3410(a). (Doc. No. 5 at p. 5.) Second, Respondents argue that the Motion should be denied because neither service nor the filing of the Motion itself occurred within 10 days of service of 14 days of mailing of the subpoenas, as the statute requires. (*Id.*) Third, Respondent argues the Declarations submitted by Mr. and Mrs. Galloway fail to establish a *prima facie* case because they are "bare bones" and do not include any explanation for their belief that the subpoenas are not relevant. (*Id.* at p. 6.) Finally, Respondent maintains the Motion should be denied because the subpoenas seek information relevant to a legitimate law enforcement inquiry, both with respect to Mr. and Mrs. Galloway. (*Id.* at pp. 7-11.)

The Court will address each of these arguments, in turn.

**A.     Timeliness**

Respondent argues Petitioners' Motion is untimely under § 3410(a) because it was due on July 10, 2019 but not successfully filed until July 12, 2019. (Doc. No. 5 at p. 5, fn 2.) Respondent argues that, although Petitioners attempted to file their Motion on July 10, 2019, that filing was

rejected by this Court.  (*Id*.)  Respondent asserts that a failed attempt to file a motion is not a sufficient justification to extend the time period set forth in the statute.  (*Id*.)

Petitioners argue that their Motion was timely filed on July 10, 2019 because it was filed on that date in accordance with instructions received from the Clerk's Office and was accepted by the Clerk of Courts and assigned a case number.  (Doc. No. 6 at p. 3.)  Although Petitioners were advised the next day of the need to refile the Motion manually, Petitioners maintain that the Motion was nonetheless timely pursuant to Fed. R. Civ. P. 5(d)(4).[5]  (*Id.*)

The evidence presented to the Court reflects that, on June 26, 2019, Special Agent Sartin sent copies of the subpoenas and a Customer Notice to Petitioners via Fed Ex overnight delivery.  (Doc. No. 5-1 at ¶ 16.)  Pursuant to § 3410(a), Petitioners were required to file their Motion to Quash "[w]ithin ten days of service or within fourteen days of mailing" of the subpoena, i.e., by no later than July 10, 2019.

As noted *supra*, Petitioners submitted the affidavit of Ms. Warner that, on July 9, 2019, she was advised by this Court's Clerk's Office that she could open the instant case by electronically filing the Petitioner's Motion to Quash.  (Doc. No. 6-1.)  Relying on the instructions she received from the Clerk's Office, Ms. Warner electronically filed the Petitioners' Motion to Quash on July 10, 2019.  (*Id.*)  As Ms. Warner correctly notes, "the filings and payment were accepted by the clerk and a case number was generated."  (*Id.*)  *See* Case No. 1:19cv1577 (N.D. Ohio).  The following day, however, Ms. Warner "was informed by an operation specialist for the Northern District of Ohio that miscellaneous cases cannot be opened electronically, and instead, they have to be filed manually by

---

[5] Fed. R. Civ. P. 5(d)(4) provides that: "The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."

hand, in person, with original signatures on all documents." (Doc. No. 6-1.)  According to Petitioners, the unidentified operation specialist requested that the Galloways file a second motion to quash. (Doc. No. 6 at p. 3.)  On July 12, 2019, Petitioners re-filed the instant Motion to Quash, which was assigned a new case number.

For the following reasons, the Court finds Petitioners' Motion was timely filed for purposes of § 3410(a).  It is undisputed that Petitioners' Motion to Quash was accepted for filing on July 10, 2019 and assigned a case number by the Clerk's Office.  It is also undisputed that Petitioners relied on (apparently erroneous) advice received from the Clerk's Office when filing the Motion electronically.  While Petitioners were later informed that the Motion had been improperly filed and would need to be re-filed manually, the Court finds that this does not render Petitioner's Motion untimely.  *See Shuler v. Garrett*, 715 F.3d 185, 187 (6th Cir. 2013) (finding that, even though the filing at issue failed to comply with a local rule of form—using the correct docket number—that error did not mean the document was untimely filed); *Lexon Ins. Co. v. Naser*, 781 F.3d 335, 340 (6th Cir. 2015) (noting that "[c]ourts have even emphasized that papers 'stricken by the district judge' for noncompliance with local rules 'should remain filed' for purposes of Civil Rule 5(d)(4) and the Appellate Rules if the right to appeal would be lost otherwise.").  In this regard, the Court notes that there is no evidence that Petitioners acted in bad faith or otherwise engaged in undue delay.  Moreover, Respondent has not argued (and there is no evidence) that it suffered any prejudice as a result of the fact that Petitioners were required to re-file the Motion manually on July 12, 2019, per the Clerk's Office's instructions.

Accordingly, the Court rejects Respondent's argument that Petitioners' Motion should be denied as untimely.

**B.** **Service**

Respondent next argues that Petitioners' Motion should be denied on the basis of improper service. (Doc. No. 5 at p. 5.) Specifically, Respondent asserts that § 3410(a) requires that service be accomplished personally or via registered mail. (*Id.*) Because Petitioners served their Motion via email only, Respondent argues it was not properly served and should be denied on that basis alone. (*Id.*)

Petitioners argue their Motion was properly and timely served because it was emailed to counsel for Respondents, Seth Kaufman, on July 10, 2019. (Doc. No. 6 at p. 5.) Petitioners assert that this constitutes proper service because § 3410(a) expressly incorporates Fed. R. Civ. P. 5(b), which requires service on counsel if a party is represented by an attorney. (*Id.*)

Section 3410(a) provides, in pertinent part, as follows:

> Service [of a motion to quash] shall be made under this section upon a Government authority by delivering or mailing by registered or certified mail a copy of the papers to the person, office, or department specified in the notice which the customer has received pursuant to this chapter. For the purposes of this section, "delivery" has the meaning stated in rule 5(b) of the Federal Rules of Civil Procedure.

12 U.S.C. § 3410(a). Rule 5(b), in turn, provides:

> **(b) Service: How Made.**
>
> **(1) Serving an Attorney**. If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party.
>
> **(2) Service in General**. A paper is served under this rule by:
>       \*\*\*
>
>     (E) sending it to a registered user by filing it with the court's electronic-filing system *or sending it by other electronic means that the person consented to in writing--in either of which events service is complete upon filing or sending,* but is not effective if the filer or sender learns that it did not reach the person to be served; or

> (F) delivering it by any other means that the person consented to in writing--
> in which event service is complete when the person making service delivers it
> to the agency designated to make delivery.

Fed. R. Civ. P. 5(b) (italics added).

Here, Petitioners attach documentation to their Reply Brief indicating that, on July 10, 2019, Mr. Kaufman (counsel for Respondents) emailed counsel for Petitioners and stated, among other things, the following: "If you file a motion to quash, can you please send me and Special Agent Sartin a courtesy copy?" (Doc. No. 6-2 at 2.) Petitioners' counsel emailed the Motion to Quash and its attachments to Mr. Kaufman later that day. (*Id.*) On July 11, 2019, Mr. Kaufman responded via email and stated: "Received. Thank you for the courtesy."

Even assuming email service on counsel is an acceptable means of service under § 3410(a) (a proposition for which Petitioners cite no authority), the Court is not convinced that Mr. Kaufman's request for a "courtesy copy" of Petitioners' Motion is equivalent to a written consent to accept service via electronic means pursuant to Rule 5(b). Indeed, while Petitioners cite case law indicating generally that service on an attorney is proper where a party is represented, they cite no authority to support their position that Mr. Kaufman's request for, and acceptance of, an e-mailed "courtesy copy" rises to the level of a written consent to electronic service of the Motion. Accordingly, the Court is not persuaded that Petitioners properly served their Motion on Respondent. However, even if Petitioners had properly served their Motion, this Court would deny the Motion to Quash on the merits, for the reasons discussed below.

### C. Sufficiency of Petitioners' Declarations

Respondents argue that Petitioners' Motion should be quashed because the Galloways' Declarations fail to establish their *prima facie* case. (Doc. No. 5 at p. 6.) Specifically, Respondents

13

maintain the Declarations are "bare bones" and do not include any explanation for their belief that the subpoenas are not relevant.  (*Id.*)  Petitioners do not directly respond to this argument.

The Court agrees with Respondent that the Petitioners' Declarations are insufficient.  As noted above, § 3410(a) states that a motion to quash must contain an affidavit or sworn statement "stating the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this title."  12 U.S.C. § 3410(a).  Conclusory statements that financial records are not relevant to the agency's law enforcement inquiry are not sufficient.  *See, e.g., Thomas*, 876 F.Supp.2d at 9 ("Movant's 'conclusory argument[s]' that the subpoenas were issued in reckless disregard of their rights 'does not satisfy [their burdens under the Right to Financial Privacy Act]'") (quoting *In re Bank United FSA (10061) Coral Gables, Florida*, 2012 WL 1225931 at * 4 (N.D. Cal. April 11, 2012)); *Hancock*, 86 F.R.D. at 211 (finding statement that the agency "has gone through the records. . . . and made copies of material matters" is insufficient under the RFPA); *Hampton*, 2018 WL 4853902 at * 4 (conclusory statement that "there is no direct nexus between the information requested and the corporate entities averred to" is insufficient for purposes of § 3410(a)); *Giorgi v. McLaughlin*,  1988 WL 9252 at *1 (N.D.N.Y. Jan. 25, 1988) (statement that the subpoena "does not indicate any fact or circumstance which would make my financial records relevant to the investigation" is insufficient); *Panaro v. U.S. Sec. & Exchange Comm'n*, 1987 WL 15951 at *2 (E.D.N.Y. Aug. 5, 1987) (statement that records "are not relevant to a legitimate law enforcement inquiry because such action is contrary to the fifth and sixth amendments" is insufficient).

In *Hancock v. Marshall, supra*, the D.C. Circuit Court further explained as follows:

The relevant legislative history is clear in its intention to require adjudication of a customer's motion only when his affidavit presents a *prima facie* case of impropriety.

The House Report accompanying the Right to Financial Privacy Act of 1978 states that the customer's affidavit must show "a factual basis for concluding that there is no reason to believe the financial records (which) are being sought contain information relevant to a legitimate law enforcement purpose." H.R.Rep.No. 1383, 95th Cong., 2d Sess. 53 (1978) U.S.Code Cong. & Admin.News 1978, pp. 9273, 9325. The report continues:

> (A)ll customers need do is make "an initial showing that access may be improper . . . " This section does not require a detailed evidentiary showing or require that the customer prove there is no legitimate law enforcement purpose for the government's attempt to obtain his records. However, it does require the customer to state facts to support his position. For example, he may state that to the best of his knowledge and belief he has no connection to the matters under investigation; he has not committed an offense related to the investigation; or that he is the subject of harassment as shown by prior unsuccessful attempts to obtain his records.

*Id.* at 53-54, U.S.Code Cong. & Admin.News 1978, p. 9325.

*Hancock,* 86 F.R.D. at 211.

Here, Petitioners' Declarations state only that they "do not believe that the records requested by the OIG's Subpoenas are relevant to the inquiry whether [Mr. Galloway] is permanently disabled." (Doc. No. 1 at PageID# 9, 27.) Petitioners' Declarations provide no explanation for the basis of their belief that the requested records are not relevant nor do they provide any factual support for this assertion. Under the authority cited above, Petitioners' Declarations are wholly insufficient to prove their *prima facie* case. Accordingly, and on this basis alone, Petitioner's Motion to Quash is denied.[6]

## D. Relevancy of Information sought by DOT-OIG

Even assuming the Petitioners' Declarations were sufficient to satisfy their *prima facie* case (which they are not), the Court finds the Motion to Quash is without merit because Respondent has

---

[6] Petitioners do not argue that "there has not been substantial compliance with the provisions of" the RFPA. *See* 12 U.S.C. §3410(a).

15

demonstrated that the subpoenas are relevant to the DOT-OIG's inquiry, with respect to the financial records of both Mr. and Mrs. Galloway.

Section 3410(c) provides that a court shall deny a motion to quash an administrative subpoena if it finds that "there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that that the records sought are relevant to that inquiry." 12 U.S.C. § 3410(c). As noted *supra,* "the notion of relevancy is a broad one" under the RFPA. *Sandsend*, 878 F.2d at 882. Financial records are considered relevant so long as they "touch on a matter under investigation" or even if they "have only a loose connection" to the core of the inquiry. *Id. See also Nicksolat*, 277 F.Supp.3d at 128.

Here, Agent Sartin submitted a Declaration in which he noted that Mr. Galloway began receiving workers compensation benefits in 2007 and has thereafter submitted, on an annual basis, a form in which he has "certified every year that he did not have any other income or compensation derived from any business enterprises." (Doc. No. 5-1 at ¶ 9.) Agent Sartin states that he has "reason to believe that Mr. Galloway received compensation from sources other than his workers' compensation benefit but failed to report it." (*Id.* at ¶ 10.) Specifically, Agent Sartin avers that he subpoenaed the Galloways' financial records because he received information that they own (or have owned) several rental properties. (*Id.* at ¶ 14.) He further states that he has "interviewed several tenants who lived at some of the properties who made rent payments via check directly payable to either Mark Galloway or Susan Galloway." (*Id.* at ¶ 14.) Based on these allegations, the Court has little trouble concluding that there is "a demonstrable reason to believe" that Respondent is conducting a legitimate investigation into the possibility that Mr. Galloway made false statements

about his income on forms that he was required to submit in connection with his workers' compensation benefits. *See Nicksolat*, 277 F.Supp.3d at 127.

The Court further concludes that Respondent has a "reasonable belief" that the records sought are relevant to that inquiry. As set forth above, the subpoenas issued by Respondent sought the production of Petitioners' financial records relating to all open and/or closed checking, savings, trust agreements, custodial and loan accounts, from the time period September 2007 to the present, including: (1) monthly bank statements, deposit tickets and details of deposits, withdrawals, debits, and checks written on the account(s); (2) loan applications, loan ledgers, loan correspondence, financial statements, tax returns, lease agreements, discounted notes, investment accounts, and contracts; (3) all checks (bank, official, cashier, Treasurer, and traveler's) and money orders purchased; (4) all incoming and outgoing wire transfers; and (5) any other books and records relating to Mark & Susan Galloway. (Doc. No. 1 at PageID# 13, 16, 19, 22.) In his Declaration, Agent Sartin states that he believes "that records from the identified accounts may reflect deposits or other transactions reflective of compensation Mr. Galloway received from sources other than his workers' compensation benefits." (Doc. No. 5-1 at ¶ 12.)

Applying the broad relevance standard applicable to judicial review of investigatory subpoenas under the RFPA, the Court finds there is a reasonable basis to believe that Petitioners' personal bank records are relevant to the investigation that DOT-OIG is conducting. Certainly, it is reasonable to conclude that Petitioners' monthly bank statements, financial statements, tax returns, loan documents, investment accounts, purchased checks and money orders, and incoming wire transfers would contain information relevant to potential fraudulent misrepresentations that Mr. Galloway may have made about his income since receiving benefits in 2007. Moreover, the Court

does not agree that the subpoenas are overly broad because they seek 12 years of financial records, as this corresponds directly to the time period during which Mr. Galloway has been receiving workers compensation benefits.

Petitioners argue, however, that "cancelled checks, leases, loan applications, or other debits from the Banks' accounts" are not relevant because "how the Galloways spend their money has absolutely no relationship as to whether Mr. Galloway is disabled." (Doc. No. 1 at p. 7.) The Court disagrees. The object of Respondent's inquiry, according to Agent Sartin's Declaration, is not whether Mr. Galloway is disabled but whether he made false representations in the annual forms he submitted certifying that he does not have any other income or compensation aside from his workers compensation benefits. It is reasonable to assume that Petitioners' loan applications would reflect their reported income, which is certainly relevant to Respondent's inquiry. Moreover, the amount of money that Petitioners have spent (as evidenced by cancelled checks, leases, and "other debits") is arguably relevant to the income at their disposal during the time period in question. It is also possible that these financial records may lead Respondent to additional witnesses or properties that may be relevant to their investigation. Thus, the Court finds documentation regarding "how the Galloways spent their money" is relevant because it "touch[es] on a matter under investigation." *Sandsend, See also Nicksolat,* 277 F.Supp.3d at 128.

The Court also rejects Petitioners' argument that the subpoenas should be quashed as to Mrs. Galloway's financial records. Agent Sartin expressly averred that Petitioners' "collectively own, or have owned" several rental properties over the years, some of which were in Mrs. Galloway's name. (Doc. No. 5-1 at ¶ 14.) He further averred that several tenants at these properties advised him that

they made rent payments "via check directly payable to either Mark Galloway or Susan Galloway." (*Id.*)

Based on these allegations, the Court finds there is a reasonable basis to believe that Mrs. Galloway's personal bank records are relevant to the investigation that DOT-OIG is conducting. Mrs. Galloway is not simply an uninvolved family member. Rather, Respondent has provided evidence (in the form of Agent Sartin's Declaration) that Mrs. Galloway jointly owned rental properties with her husband and, further, that at least some rent checks were made directly payable to her. Under similar circumstances, federal courts have declined to quash subpoenas seeking financial records of a spouse or other family member. *See, e.g., Babenko v. Federal Trade Commission*, 2012 WL 12883322 at * 2 (S.D. Ohio March 22, 2012) (denying motion to quash subpoenas of spouse's bank records where evidence was submitted that spouse provided one or more loans to her husband and she served as president of one of his companies); *Grenda v. United States Securities & Exchange Commission*, 2017 WL 4053821 at * 3-4 (W.D. N.Y. Sept. 14, 2017) (denying motion to quash subpoenas directed to financial records of son and wife of the target of the investigation).

## IV.    Conclusion

Accordingly, and for all the reasons set forth above, Petitioners' Motion to Quash (Doc. No. 1) is DENIED.

**IT IS SO ORDERED.**


        *s/Pamela A. Barker*
        PAMELA A. BARKER
Date: September 18, 2019        U. S. DISTRICT JUDGE